# EXHIBIT 2

# EXHIBIT 2

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CYNTHIA FALLS, et al.<br><br>    Plaintiffs<br><br>v.<br><br>DESERT PALACE, INC.,<br><br>    Defendant | Case No.: 2:17-cv-00019-APG-BNW<br><br>**Order Granting in Part Defendant's Motion for Summary Judgment**<br><br>[ECF No. 99] |

  Plaintiffs Cynthia Falls, William Berry, Jr., and Shane Kaufmann worked as dealers at Caesars Palace hotel and casino in Las Vegas. Defendant Desert Palace, Inc. operates Caesars Palace. The plaintiffs allege that the casino discriminates against its dealers by fulfilling customers' preferences for having dealers of a certain age, gender, race, or national origin. The plaintiffs allege that due to this practice, they have been deprived of opportunities to deal in more prestigious areas of the casino, such as the high limit area known as Palace Court. They also contend they were retaliated against when they complained of the discriminatory behavior.

  Desert Palace moves for summary judgment, arguing that even assuming the plaintiffs' allegations of discriminatory conduct are true, their claims nevertheless fail for a variety of reasons. The parties are familiar with the facts so I will not describe them in detail except as necessary to resolve the motion.

  I grant Desert Palace's motion as to all of the plaintiffs' disparate treatment discrimination claims, Berry's hostile work environment claim, Berry and Kaufmann's retaliation claims, and a portion of Falls' retaliation claim. I deny the motion as to Falls and Kaufmann's hostile work environment claims and as to a portion of Falls' retaliation claim.

/ / / /

# I. ANALYSIS

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

## A. Discrimination Claims

Title VII makes it unlawful for an employer to discriminate against an individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish a prima facie case of Title VII discrimination by showing (1) the plaintiff belongs to a protected class; (2) he or she was performing according to the employer's legitimate expectations; (3) he or she suffered an adverse employment action; and (4) employees outside of his or her protected class with similar qualifications were treated more

2

favorably. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006). If the plaintiff makes out a prima facie case, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123-24 (9th Cir. 2000). "If the employer does so, the plaintiff must then show that the articulated reason is pretextual either directly by persuading the [fact-finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009) (quotation omitted).

In the context of a disparate treatment claim, an employment action is adverse if it "affect[s] employment or alter[s] the conditions of the workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). In other words, the action must "materially affect[] the compensation, terms, conditions, or privileges of employment." *Campbell v. Hawaii Dep't of Educ.*, 892 F.3d 1005, 1012 (9th Cir. 2018) (quotation omitted).

### 1. Berry

Desert Palace argues that Berry identified only a single instance on a single shift when he was moved out of the Palace Court because of his race. Desert Palace argues this single lateral transfer for part of one shift cannot support a disparate treatment claim because Berry testified that he lost no pay or benefits as a result, so it did not affect the material terms of his employment. Desert Palace also argues Berry cannot identify any member of Caesars' management (as opposed to his co-workers) who told him that he was reassigned due to his race. Berry responds that the lateral transfer cases on which Desert Palace relies do not apply here because Berry was not transferred to a different position. Rather, he contends that he was

3

excluded from a part of the casino that other employees were allowed to work in and thus was humiliated.

Berry has not presented evidence from which a reasonable jury could find this one act of excluding him from a particular room for part of one shift materially affected the compensation, terms, conditions, or privileges of his employment. The evidence is undisputed that all dealers were paid the same regardless of whether they were in the salon rooms, the Palace Court open area, or the main casino floor, and all tips were pooled. *See, e.g.*, ECF No. 99-3 at 21. Berry admits he lost no pay as a result of the incident. *Id.* at 33. Berry has not identified any term of his employment that was affected, and he cites no law for the proposition that feelings of humiliation can support a disparate treatment claim. The only case on which he relies involved an employee who was terminated and who thus suffered an adverse employment action. *See Chaney v. Plainfield Healthcare Ctr.*, 612 F.3d 908, 915 (7th Cir. 2010). I therefore grant Desert Palace's motion as to Berry's disparate treatment claim.

### 2. Falls and Kaufmann

Desert Palace argues that removing Falls and Kaufmann from the Palace Court does not constitute an adverse employment action because dealers are paid the same no matter where they work, dealing in the Palace Court is not a pathway to promotion, and they were not denied an opportunity to earn overtime because the collective bargaining agreement allowed them to volunteer for overtime but neither of them did so. Desert Palace notes that both Falls and Kaufmann told the Equal Employment Opportunity Commission (EEOC) that they experienced no financial harm from the reassignments.

Falls and Kaufmann respond that a dispute remains about whether they were denied overtime opportunities by being excluded from the Palace Court. They also argue that removal

from Palace Court was viewed by the employees and management as punishment, humiliating, and a loss of prestige.

As discussed with respect to Berry, Falls and Kaufmann cite no law supporting the proposition that feelings of humiliation or the perception of punishment or loss of prestige are adverse employment actions in the context of a disparate treatment claim. Loss of overtime could be an adverse action because it would affect the employees' pay. But Falls and Kaufmann present no evidence that anyone outside their protected classes received more overtime than they did as a result of their reassignment out of Palace Court. I therefore grant Desert Palace's motion as to Falls and Kaufmann's disparate treatment claims.

**B. Hostile Work Environment**

"A plaintiff asserting a Title VII claim under a hostile work environment theory must show (1) the existence of a hostile work environment to which the plaintiff was subjected, and (2) that the employer is liable for the harassment that caused the hostile environment to exist." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006). "To establish the existence of a hostile work environment, a plaintiff must prove that (1) she was subjected to verbal or physical conduct of a sexual [or racial] nature, (2) this conduct was unwelcome, and (3) this conduct was sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment." *Id.* (quotation omitted).

The harassing conduct must be both objectively and subjectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). When assessing whether conduct is objectively offensive, I view the conduct from "the perspective of the reasonable victim." *Brooks v. City of San Mateo*, 229 F.3d 917, 924 (9th Cir. 2000). To determine whether an environment is hostile, I consider "the totality of the circumstances, including the frequency of the discriminatory

5

1  conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

2  utterance; and whether it unreasonably interferes with an employee's work performance." *Ray v.*

3  *Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000) (quotation omitted).  "Not every insult or

4  harassing comment will constitute a hostile work environment." *Id.*  But "[r]epeated derogatory

5  or humiliating statements . . . can constitute a hostile work environment." *Id.*

6       1.  Berry

7      Desert Palace contends Berry cannot show a hostile work environment because his claim

8  amounts to a single incident.  Berry responds that a single incident could be sufficiently severe

9  and degrading to support a hostile work environment claim and that a jury should resolve this

10  question.

11      "A single incident of harassment . . . can support a claim of hostile work environment

12  because the frequency of the discriminatory conduct is only one factor in the analysis." *Little v.*

13  *Windermere Relocation, Inc.*, 301 F.3d 958, 967 (9th Cir. 2002) (internal quotation marks

14  omitted).  However, that single incident must be "extremely severe." *Brooks*, 229 F.3d at 926.

15      Although excluding Berry from a room in the workplace based on his race is undoubtedly

16  offensive, no reasonable jury could find that this single incident for part of one shift was so

17  severe it altered the terms and conditions of Berry's employment.  Considering the totality of the

18  circumstances, the incident was less severe than those where courts have found a single incident

19  could support a hostile work environment claim, such as where the employee was raped by a

20  client. *See, e.g.*, *Little*, 301 F.3d at 964.  Berry was not touched physically.  And the incident did

21  not unreasonably interfere with his work performance either on the day in question or thereafter.

22  Although he was excluded from a particular salon room, he continued to work in other parts of

23

1 the casino and he suffered no employment consequence, such as a loss of pay or demotion. I

2 therefore grant Desert Palace's motion as to Berry's hostile work environment claim.

### 2. Falls and Kaufmann

Desert Palace contends Falls and Kaufmann's hostile work environment claims fail because they are actually complaining about discrete acts of disparate treatment, which they cannot transform into a hostile work environment claim. Alternatively, Desert Palace argues that the conduct was not sufficiently severe because dealers understand that players have "often-whimsical views of what is lucky" and those views do not necessarily reflect discriminatory animus. ECF No. 99 at 23. It also argues the conduct was not pervasive because the plaintiffs can identify only isolated instances over many years where they actually heard a player request a particular characteristic or a manager make an assignment on the basis of a protected characteristic.

The plaintiffs respond that the evidence shows a severe and pervasive discriminatory work environment where protected characteristics were routinely used to determine where employees could work and humiliated employees who were excluded from areas of the casino due to those protected characteristics.

Viewing the evidence and reasonable inferences in the light most favorable to Falls and Kaufmann, a reasonable jury could find a hostile work environment. Falls and Kaufmann do not complain about only a few discrete acts of disparate treatment. They complain of a work environment where staffing decisions were based on protected characteristics such as race and gender, both for themselves and other dealers in the Palace Court, combined with comments about the fact that the staffing decisions were made on the basis of these protected characteristics.

7

As to whether the conduct was severe, a "customer's discriminatory preference does not justify an employer's discriminatory practice unless—for those protected categories for which the defense is available under Title VII—the discriminatory requirement amounts to a bona fide occupational qualification." *Tamosaitis v. URS Inc.*, 781 F.3d 468, 482-83 (9th Cir. 2015). A reasonable jury could find that an employer accommodating its customers' preferences by assigning certain employees to deal in the salon rooms or in Palace Court while excluding other employees based on protected characteristics such as race or gender is severe.

A reasonable jury also could find the conduct was pervasive. Falls and Kaufmann testified to numerous instances where they personally heard the customer make a request based on a protected characteristic and Desert Palace honored that request. *See, e.g.*, ECF Nos. 99-8 at 26-27; 106-3 at 28-34; 106-4; 106-5; 108-1. They also heard management state that staffing decisions were based on protected characteristics. *See, e.g.*, ECF Nos. 99-8 at 27; 106-4. Other employees testified to the same thing.[1] *See* ECF Nos. 103-7 at 4-5[2]; 104-16 at 5; 104-15; 104-16; 104-17 at 3-4; 106-17. Such requests were being accommodated "2-3 times a month for many years," and "sometimes for days [at] a time" based on the length of the customer's stay. ECF No. 103-7 at 5; *see also* ECF Nos. 104-15 at 3 (stating "black dealers were discriminated against in Palace Court on a regular basis from 2007 forward" because they were excluded from the private salons); 104-16 at 4 (stating assignments based on race and gender happened "over and over in Palace Court"); 104-17 at 4 (another employee testifying it happened "10 times nearly every

---

[1] Desert Palace suggests that Falls and Kaufmann cannot rely on discrimination against other employees of which they were unaware. But a jury could find the dealers observed and talked about what was going on in the Palace Court regardless of whether the action was taken directly against them and regardless of whether they could identify the incidents by a particular date, time, and participants. *See, e.g.*, ECF Nos. 99-6 at 18; 99-8 at 53; 108-1 at 7, 9; 114-3.

[2] Desert Palace objects to this exhibit because it is an unsigned affidavit. However, a signed copy was later filed. ECF No. 116-1.

8

month" and happened daily during Chinese New Year); 106-17 at 3-4 (another employee mentioning the Chinese New Year example and referring to another guest who visits several times a year and requests only female dealers each time); 136-3 at 31, 35 (statements from dealers interviewed during an internal investigation describing the practice as occurring daily).[3]

Caesar's internal records show that its employees were making staffing decisions on protected characteristics. *See* ECF Nos. 106-12; 106-13[4]; 106-14. Indeed, one Caesars employee stated that it was "a common thing" for there to be a specification for Chinese speaking female dealers. ECF No. 106-12 at 2. I therefore deny Desert Palace's motion on Falls and Kaufmann's hostile work environment claims.

**C. Retaliation**

To make out a prima facie retaliation case, a plaintiff must show that he or she "engaged in protected activity," that he or she suffered a "materially adverse action," and that "there was a causal relationship between the two." *Westendorf v. W. Coast Contractors of Nev., Inc.*, 712 F.3d 417, 422 (9th Cir. 2013). "An employee engages in protected activity when she opposes an employment practice that either violates Title VII or that the employee reasonably believes violates that law." *Id.* (quotation omitted).

---

[3] The plaintiffs also present evidence that (1) numerous employees gave statements to the EEOC investigator indicating that they witnessed these discriminatory practices and (2) in 2014, many dealers signed a petition protesting that female Asian dealers were being given preferential treatment. ECF Nos. 104-2; 106-8. Desert Palace objects to these exhibits as unauthenticated hearsay. Even without considering these exhibits, Falls and Kaufmann have raised a genuine dispute to survive summary judgment on their hostile work environment claims. I therefore need not address these objections.

[4] Desert Palace objects to this exhibit as hearsay within hearsay. ECF No. 112 at 19. However, the statements included in the email appear to have been made by Desert Palace employees "on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). Alternatively, the plaintiffs presumably could present this evidence in admissible form at trial by calling the employees who made the statements.

9

An adverse employment action means "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." *Ray*, 217 F.3d at 1242-43 (quotation omitted). "[M]ere ostracism by co-workers does not constitute an adverse employment action." *Id.* at 1241 (quotation omitted). But a lateral transfer may constitute an adverse employment action under certain circumstances.[5] *Id.* "Context matters." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69. Thus, a reassignment of duties may constitute an adverse employment action. *Id.* at 70-71 ("Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable."). "Whether a particular reassignment is materially adverse depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Id.* (quotation omitted).

"Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360. Causation "may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." *Ray*, 217 F.3d at 1244 (quotation omitted). The plaintiff "must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that

---

[5] Thus, the "antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 64; *see also Campbell*, 892 F.3d at 1021 (stating that although the employer's "alleged actions cannot support [the plaintiff's] claims of disparate treatment, the same is not necessarily true for her retaliation claims").

10

the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003), *opinion amended on denial of reh'g*, No. 00-35999, 2003 WL 21027351 (9th Cir. May 8, 2003).

### 1. Berry

Desert Palace argues Berry cannot show he was terminated in retaliation for engaging in protected activity because there is a two-year gap between when he filed his complaint and his termination. It also contends the employees who created the schedule, reported his attendance infractions, and decided to terminate him for poor attendance did not know about his complaint and thus could not have retaliated against him on that basis. Desert Palace notes that two other employees were terminated at the same time as Berry for the same violation, as have over 100 other Caesars employees on other occasions.

Desert Palace also argues Berry cannot show pre-termination retaliation. It argues Berry's reassignment outside of the Palace Court in April 2006 was not retaliatory because there is no evidence that the person who decided to reassign him, Roland Saenz, knew Berry had complained. Desert Palace also argues that even so, the lateral move to the main casino floor is not the type of adverse action that would dissuade a reasonable employee from complaining about discrimination because it did not affect his title, pay, benefits, or promotion opportunities. Desert Palace contends Berry's complaint that managers gave him the cold shoulder is insufficient to constitute an adverse employment action. Next, Desert Palace argues Berry cannot show he was treated differently by scrutinizing his attendance and game balancing because he cannot show the persons who engaged in this behavior knew of his complaint. Finally, Desert Palace contends Berry cannot show retaliation based on managers selecting him

11

less often for early outs because he has no evidence those supervisors knew of his complaint and he has no evidence that he actually received fewer early outs than other coworkers.

Berry disputes that he received enough infraction points under Caesars' attendance policy to support termination. He also argues that his termination came only five months after the Nevada Equal Rights Commission found in his favor.

Even viewing the facts in the light most favorable to Berry, no reasonable jury could find he was terminated in retaliation for his complaints about discrimination in the Palace Court. The employees who observed his time infraction, marked it, and then decided to terminate him for violating the attendance policy each aver they did not know about Berry's protected activity at the time they acted. *See* ECF Nos. 99-23 at 3; 99-25 at 3; 112-8 at 6; 112-13 at 3. Berry presents no evidence raising a genuine dispute on this issue. He therefore cannot show that but for his protected activity (of which these employees were unaware), he would not have been fired for violating the attendance policy.

Berry does not respond to Desert Palace's arguments concerning pre-termination retaliation. He has not pointed to evidence showing he was retaliated against before he was terminated.[6] I therefore grant Desert Palace's motion as to Berry's retaliation claim.

---

[6] The fact section of the opposition brief states that Berry testified that after he complained, he was moved out of Palace Court, management gave him the cold shoulder, he was not allowed to be the relief supervisor as much, and he was no longer given leeway in being a few minutes late from a break. ECF No. 102 at 6 (citing ECF No. 106-1 at 19, 21-23). Berry did not refer to this or any other evidence in the argument section regarding his retaliation claim. Further, Berry could not state that any of those individuals who took action against him knew about his protected activity. *See* ECF No. 106-1 at 19. And Berry has not presented other evidence to show when those employees learned of his protected activity in relation to when the adverse actions took place. He surmises in his declaration that one of his supervisors, Roland Saenz, must have known he was the one who complained. ECF No. 104-19. But he has presented no evidence beyond his own speculation whether Saenz knew or when Saenz knew of Berry's complaint and what actions Saenz then took against him. I will not sift through the hundreds of pages of exhibits and attempt to construct a retaliation theory for Berry when he has not done so

12

2. Falls

Desert Palace argues Falls cannot show retaliation because she believes her removal from the Palace Court in September 2010 was based on her union activity, not because she complained about discrimination. It also argues Falls cannot rely on a documented coaching she received more than three years after she complained about discrimination because there is no temporal proximity and it had no impact on her pay, benefits, or other terms and conditions of employment. It contends she cannot rely on feeling alienated from her supervisors. Finally, it contends she cannot rely on not being assigned to the private salons to deal because that has no impact on her pay, benefits, or promotion opportunities.

Falls responds that a lateral transfer and a write up are likely to deter a reasonable employee from complaining about discrimination. She also argues that she was involved in the EEOC investigation, so the date of her initial complaint is not the only date at issue to measure proximity between the time of her protected activity and the adverse actions.

Falls and two other dealers sent a letter on January 25, 2010 to Caesars and union management complaining about the discriminatory conduct. ECF No. 104-1 at 2. In September 2010, Falls was removed from the Palace Court. ECF No. 99-8 at 7. She stated at her deposition that she believed she was removed from the Palace Court because of her "positions as a union official and . . . affiliation with the union." *Id.* Specifically, she believed that she was removed because she confronted Caesars management on issues related to insurance and changes in procedures. *Id.* at 9-10. She did not state that she believed she was removed from the Palace Court due to her January 2010 complaint about the discriminatory staffing decisions.

---

himself. *Christian Legal Soc. Chapter of Univ. of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010) ("Judges are not like pigs, hunting for truffles buried in briefs." (quotation omitted)).

13

Falls filed her first charge with the EEOC on October 26, 2010. ECF No. 104-1. She stated that after her January 2010 complaint, she was not allowed to deal to customers who made requests for Asians or males only, was not assigned to private salons because more Asian dealers were brought in, was subjected to a customer's foul language and was made to deal to another abusive customer for several weekends with no response from her supervisor after she complained. *Id.* at 2-3.

In January 2014, Falls was given a written warning, called a "documented coaching." ECF No. 99-33. That discipline arose from an incident on January 6, 2014, when Falls spoke to a floor supervisor and made "accusations of discrimination and poor treatment of supervisors by management." *Id.* The documented coaching does not mention whether there were guests in the area who may have heard her comments. *Id.* The supervisor who reported the incident stated that he was standing near a roulette game and was watching a blackjack game, which suggests that perhaps there were guests in the area. ECF No. 99-34. Falls does not deny she made the comments but disputes that there were any guests in the area. ECF No. 108-1 at 5. Falls states that she knows from her work with the union that a documented coaching can be used as a tool to ultimately fire an employee. ECF No. 108-1 at 5.

Viewing the facts in the light most favorable to Falls, no reasonable jury could find the September 2010 removal from Palace Court was related to her January 2010 complaint. Falls does not identify who made the decision to remove her from the Palace Court and presents no evidence that person or persons knew about her discrimination complaint. She surmises that the September 2010 action was related to her union activity, not her complaint nine months earlier. Likewise, she presents no evidence that the persons who allegedly retaliated against her following her January 2010 complaint (by not assigning her to games or by allowing her to be

14

abused by customers) knew about her January 2010 complaint. And though she argues that she was involved in the EEOC investigation, she does not provide any dates of protected activity or when the person who made the allegedly retaliatory decisions learned of her protected activity. I therefore grant Desert Palace's motion as to these alleged retaliatory acts.

However, a reasonable jury could find that the documented coaching was retaliatory. Her complaint to a supervisor about discriminatory practices was protected activity. She was immediately disciplined for the very act of complaining about discriminatory practices. And she has presented evidence that a documented coaching could be used at a later date to justify further disciplinary action. Although Desert Palace argues she was disciplined for disparaging the company in front of guests, a reasonable jury could find there were no guests in earshot. Falls denies there were guests present and the documented coaching does not state that guests heard her comments.

Desert Palace argues that Falls has not suffered any additional disciplinary action based on the documented coaching. But that is a matter of damages, not liability. An employee does not know at the time they are written up whether that discipline will later be used against them. The question is whether written discipline would deter a reasonable employee from complaining. A reasonable jury could find that it would, even if later nothing more came of it. I therefore grant in part and deny in part Desert Palace's motion as to Falls' retaliation claim. The portion of Falls' retaliation claim based on the documented coaching remains pending.

### 3. Kaufmann

Desert Palace argues Kaufmann cannot rely on his transfer out of the Palace Court in May 2013 because that was two and a half years after he filed his October 2010 EEOC charge, so there is no temporal proximity. It argues that a transfer out of the Palace Court is a lateral

15

1  transfer that cannot constitute an adverse employment action. Finally, Desert Palace contends
2  that the single written warning he received in March 2012 was not retaliatory because it was 15
3  months after his last protected activity and a written warning is not an adverse employment
4  action.

5  Kaufmann responds that a lateral transfer and a written warning are likely to deter a
6  reasonable employee from complaining about discrimination. He also argues that he was
7  involved in the EEOC investigation, so the dates of his initial complaint are not the only dates at
8  to measure proximity between the time of her protected activity and the adverse actions.

9  Kaufmann and other dealers sent a letter in February 2008 to Caesars and union
10 management complaining about a hostile work environment. ECF No. 99-38. In December
11 2009, he and other male dealers were not allowed to deal to a customer who requested only
12 female dealers. *Id.* He witnessed other race- and gender-based assignments in July, August, and
13 October 2010. *Id.* He thus filed an EEOC charge on October 19, 2010 describing these incidents.
14 ECF No. 99-38. He did not complain of retaliation in this charge. *Id.*

15 In March 2012, Kaufmann received written discipline for refusing to honor a guest's
16 request that he move so the guest could see a scoreboard for a sporting event. ECF No. 99-6 at
17 40-41. Kaufmann contends this write up was retaliatory because it was unwarranted, as there
18 was nowhere for him to move and still do his job. *Id.* at 41.

19 In June 2013, Kaufmann was removed from the Palace Court and asked to deal games
20 that he had no experience dealing. ECF No. 104-12. On November 21, 2013, he filed an internal
21 complaint about being moved out of Palace Court. ECF No. 104-12. He filed his second EEOC
22 charge on January 7, 2014. ECF No. 99-39 at 2. This time, he complained of retaliation with
23

16

respect to his removal from the Palace Court and being asked to deal games that he had no experience dealing. *Id.*

Kaufmann made an internal complaint about discriminatory staffing assignments on July 30, 2014. ECF No. 104-10 at 3. He filed a third charge with the EEOC regarding the discriminatory staffing assignments on October 12, 2017. ECF No. 99-35. He did not charge retaliation. *Id.*

Kaufmann has failed to raise a triable dispute on his retaliation claim. The March 2012 discipline came a year and a half after the October 2010 EEOC charge.[7] The June 2013 removal from Palace Court and being asked to deal unfamiliar games was more than two and a half years after his October 2010 charge. These events are too remote in time to support an inference of causation. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) ("Action taken (as here) 20 months later suggests, by itself, no causality at all."). While Kaufmann, like Falls, argues that he was involved in the EEOC investigation, he does not provide any dates of protected activity or when the person who made the allegedly retaliatory decisions learned of Kaufmann's protected activity. I therefore grant Desert Palace's motion as to Kaufmann's retaliation claim.

## II. CONCLUSION

I THEREFORE ORDER that defendant Desert Palace, Inc.'s motion for summary judgment **(ECF No. 99) is GRANTED in part**. The motion is granted as to the plaintiffs' discrimination claims, plaintiff William Berry's hostile work environment claim, plaintiff William Berry and Shane Kaufmann's retaliation claims, and a portion of Cynthia Falls'

---

[7] In January 2012, Kaufmann sent a letter to someone named "Mrs. Thomas." ECF No. 104-10. It is unclear from the exhibit who Mrs. Thomas is and there is no evidence this letter was shared with anyone who allegedly retaliated against Kaufmann.

17

1 retaliation claim. The motion is denied as to plaintiffs Cynthia Falls and Shane Kaufmann's hostile work environment claims and plaintiff Cynthia Falls' retaliation claim based on the documented coaching.

DATED this 18th day of October, 2019

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE